IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

BONNIE MOORE,

      Plaintiff,

vs.

MERCK & CO., INC.,

      Defendant.

Civil Action No.: 1:08-CV-918

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff, BONNIE MOORE, through her undersigned attorneys Levin, Papantonio et al., sues Defendant Merck & Company, Inc., and alleges as follows:

### I. JURISDICTION AND VENUE

1.    This Court has jurisdiction pursuant to 28 U.S.C. §§1332, as complete diversity exists between Plaintiff and Defendant. Plaintiff is a resident of the State of Texas, and Defendant is incorporated and has its primary place of business in the State of New Jersey. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

2.    Venue is proper within this district pursuant to Case Management Order No. 3, filed November 1, 2006, signed by John F. Keenan, allowing Fosamax-related cases to be filed directly in the Southern District of New York.

## II. PARTIES

3.    Plaintiff BONNIE MOORE was born October 16, 1954. At all relevant times Plaintiff was a resident of the State of Texas, and used FOSAMAX from approximately November 2004 through approximately April 2006.

4.    Defendant is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in New Jersey. The Defendant's registered office is at 820 Bear Tavern Road, City of West Trenton, Mercer County, New Jersey.

5.    Defendant was at all relevant times authorized to conduct business in the State of Texas.

6.    At all times relevant Defendant regularly transacted business in the State of Texas and continues to do so.

7.    At all relevant times Defendant, through its agents, servants, employees and apparent agents was the designer, manufacturer, marketer, distributor and seller of FOSAMAX, a bisphosphonate drug used primarily to mitigate or reverse the effects of osteoporosis.

8.    Defendant, either directly or through its agents, apparent agents, servants or employees, at all relevant times, sold and distributed FOSAMAX in the State of Texas for the treatment or prevention of osteoporosis, Paget's Disease and other off-label uses.

-2-

9.    Defendant derives substantial revenue from pharmaceutical products used or consumed in the State of Texas.

10.    Defendant expected, or should have expected, that its business activities could or would have consequences within the State of Texas.

### III. SUMMARY OF THE CASE

11.    Defendant, either directly or through its agents, apparent agents, servants or employees designed, manufactured, marketed , advertised, distributed and sold FOSAMAX for the treatment of osteoporosis, Paget's Disease, and other off-label uses.

12.    As a result of the defective nature of FOSAMAX, persons who were prescribed and ingested FOSAMAX, including Plaintiff BONNIE MOORE, have suffered and may continue to suffer severe and permanent personal injuries to the jaw bone, including osteonecrosis of the jaw and other diagnoses of irreversible damage to the jaw.

13.    Defendant concealed its knowledge of FOSAMAX's unreasonably dangerous risks from Plaintiff BONNIE MOORE, other consumers, and the medical community.

14.    Defendant failed to conduct adequate and sufficient post-marketing surveillance of FOSAMAX after it began marketing, advertising, distributing, and selling the drug.

15.    As a result of Defendant's actions and inaction, Plaintiff BONNIE MOORE was injured due to her ingestion of FOSAMAX, which has caused and will continue to cause Plaintiff's various injuries and damages. Plaintiff accordingly seeks compensatory damages.

## IV. FACTUAL BACKGROUND

16.    At all relevant times Defendant was responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

17.    In September 1995, the United States Food and Drug Administration ("FDA") approved Merck's compound alendronate, which is marketed by Merck as FOSAMAX, for various uses, including the treatment of osteoporosis and Paget's Disease.

18.    FOSAMAX falls within a class of drugs known as bisphosphonates. Bisphosphonates are used for treating bone conditions such as osteoporosis and Paget's disease.  Other drugs within this class such as Aredia and Zometa are also used as chemotherapy and as adjunct chemotherapy but are not indicated for use in non-cancerous conditions such as osteoporosis.

19.    There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphophonates include the following: pamidronate (Aredia); ibandronate (Boniva); risedronate (Actonel); and alendronate (FOSAMAX). The non-nitrogenous bisphosphonates include the following: etridonate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid).  Alendronate, like the others, contains a nitrogen atom, whereas etridonate, clodronate, and tiludronate do not. The PDR for FOSAMAX confirms that the molecule contains a nitrogen atom.

-4-

20.    Throughout the 1990s and 2000s, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis of the jaw within the nitrogenous bisphosphonates used for chemotherapy. As with its reported and acknowledged side effects concerning irritation, erosion, and inflammation of the upper gastrointestinal tract, Merck knew or should have know that FOSAMAX, as a nitrogenous bisphosphonate, shared a similar adverse event profiles to the other drugs within this specific subclass of bisphosphonates (i.e., those containing nitrogen).

21.    Merck knew and or should have known that bisphosphonates, including FOSAMAX, inhibit endothelial cell function. Similarly, Merck knew or should have known that bisphosponates also inhibit vascularization of the affected area and induce ischemic changes specific to patients mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic changes appear to be cumulative in nature.

22.    Merck also knew or should have known that these factors combine to create a compromised vascular supply in the affected area. As a result, a minor injury or disease can turning into a non-healing wound. That in turn can progress to widespread necrosis (bone death) and osteomyelitis (inflammation of bone marrow).

23.    Dentists are now being advised by state dental associations to refrain from using any invasive procedure (such as drilling a cavity) for any patient on FOSAMAX.

24.    Once the osteonecrosis begins and becomes symptomatic, it is very difficult to treat and is not reversible.

-5-

25.    Shortly after Defendant began selling FOSAMAX, reports of osteonecrosis of the jaw
       and other dental complications among users began surfacing, indicating that
       FOSAMAX shared the class effects of the other nitrogenous bisphosphonates.
       Despite this knowledge, Defendant failed to implement further study  risk of
       osteonecrosis of the jaw relative to FOSAMAX.   Rather than evaluating and
       verifying the safety of FOSAMAX with respect to osteonecrosis of the jaw,
       Defendant proposed further uses of FOSAMAX, such as FOSAMAX-D, and sought
       to extend the exclusivity period of FOSAMAX through 2018.

26.    Osteonecrosis of the jaw is a serious medical event and can result in severe disability
       and death.

27.    Since FOSAMAX was released, the FDA has received a number of reports
       osteonecrosis of the jaw among users of FOSAMAX.

28.    On August 25, 2004, the FDA posted its ODS (Office of Drug Safety) Postmarketing
       Safety Review on bisphosphonates - - specifically pamidronate (Aredia), zoledronic
       acid (Zometa), risedronate (Actonel), and alendronate (FOSAMAX).  This was an
       epidemiologic review of the FDA adverse events database conducted by the FDA's
       Division of Drug Risk Evaluation.

29.    As a result of the FDA Review, the FDA observed that the risk of osteonecrosis of
       the jaw was not confined to bisphosphonates used for chemotherapy.  The FDA's
       review indicated that the osteonecrosis of the jaw was a class effect which
       specifically extended to the oral bisphosphonate, FOSAMAX.

30.   As a result, the FDA recommended and stated that the labeling for FOSAMAX should be amended by Merck to specifically warn about the risk of osteonecrosis of the jaw. Merck has refused to accede to the FDA's request and, to this day, still does not warn of the risk of osteonecrosis of the jaw in its FOSAMAX labeling.

31.   Rather than warn patients, and despite knowledge known by Defendant about increased risk of osteonecrosis of the jaw in patients using FOSAMAX, Defendant continues to defend FOSAMAX and minimize unfavorable findings.

32.   FOSAMAX is one of Defendant's top selling drugs. Averaging more than $3 billion a year in sales.

33.   Consumers, including Plaintiff BONNIE MOORE, who have used FOSAMAX for the treatment or prevention of osteoporosis, Paget's Disease and/or other off-label uses, have several alternative safer products available to treat their conditions.

34.   Defendant knew of the significant risk of dental and oral complications caused by ingestion of FOSAMAX, but Defendant did not adequately and sufficiently warn consumers, including Plaintiff BONNIE MOORE, or the medical community, of such risks.

35.   As a direct result, Plaintiff BONNIE MOORE was prescribed FOSAMAX and has been permanently and severely injured, having suffered serious consequences from the ingestion of FOSAMAX. Plaintiff BONNIE MOORE requires and will in the future require ongoing medical care and treatment.

36.    Plaintiff BONNIE MOORE has suffered from mental anguish from the knowledge that she will have life-long complications as a result of the injuries Plaintiff sustained from the use of FOSAMAX.

37.    Plaintiff BONNIE MOORE was prescribed and began taking FOSAMAX in 2004.

38.    Plaintiff used FOSAMAX as prescribed and in a foreseeable manner.

39.    As a direct and proximate result of using FOSAMAX, Plaintiff suffered severe personal injury to her jaw.

40.    Plaintiff, as a direct and proximate result of using FOSAMAX, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

41.    Plaintiff used FOSAMAX which had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold.

42.    Plaintiff would not have used FOSAMAX had Defendant properly disclosed the risks associated with the drug. Alternatively, Plaintiff would have known the precursor events of osteonecrosis of the jaw and would have been able to avoid the clinical manifestation of the symptoms as they currently exist.

43.    Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with taking FOSAMAX. The running of any applicable statute of limitations has been tolled by reason of Defendant's fraudulent concealment.

-8-

44.    As a result of Defendant's actions, Plaintiff and her prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Defendant's acts, omissions, and misrepresentations.

## V. COUNTS

### COUNT I:  NEGLIGENCE

45.    Plaintiff re-alleges the above paragraphs as if fully set forth herein.

46.    Defendant owed Plaintiff, BONNIE MOORE, and other consumers, a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

47.    Defendant failed to exercise due care under the circumstances and therefore breached this duty by:

a. failing to properly and thoroughly test FOSAMAX before releasing the drug to market;

b. failing to properly and throughly analyze the data resulting from the pre-marketing tests of FOSAMAX;

c. failing to conduct sufficient post-market testing and surveillance of FOSAMAX;

d.  designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of FOSAMAX and without proper instructions to avoid the harm which

-9-

could foreseeably occur as a result of using the drug;

      e.  failing to exercise due care when advertising and promoting FOSAMAX; and

      f.   negligently continuing to manufacture, market, advertise, and distribute FOSAMAX after Defendant knew or should have known of its adverse effects.

48.    As a direct and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff BONNIE MOORE sustained significant and permanent injury to her jaw. In addition, Plaintiff required and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

49.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

-10-

## COUNT II:  STRICT LIABILITY

50.    Plaintiff re-alleges the above paragraphs as if fully set forth herein.

51.    Defendant manufactured, sold, distributed, marketed, and/or supplied FOSAMAX in a defective and unreasonably dangerous condition to consumers, including Plaintiff BONNIE MOORE.

52.    Defendant designed, manufactured, sold, distributed, supplied, marketed, and/or promoted FOSAMAX, which was expected to reach and did in fact reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendant.

53.    Plaintiff used FOSAMAX as prescribed and in a manner normally intended, recommended, promoted, and marketed by Defendant.

54.    FOSAMAX failed to perform safely when used by ordinary consumers, including Plaintiff, including when it was used as intended and in a reasonably foreseeable manner.

55.    FOSAMAX was defective in its design and was unreasonably dangerous in that its unforeseeable risks exceeded the benefits associated with its design or formulation.

56.    FOSAMAX was defective in design or formulation in that it posed a greater likelihood of injury than other similar medications and was more dangerous than an ordinary consumer could reasonably foresee or anticipate.

57.    FOSAMAX was defective in its design and was unreasonably dangerous in that it neither bore nor was packaged with nor accompanied by warnings adequate to alert

-11-

consumers, including Plaintiff, of the risks described herein, including, but not limited to, the risk of osteonecrosis of the jaw.

58. Although Defendant knew or should have known of the defective nature of FOSAMAX, it continued to design, manufacture, market, and sell FOSAMAX so as to maximize sales and profits at the expense of the public health and safety. By so acting, Defendant acted with conscious and deliberate disregard of the foreseeable harm caused by FOSAMAX.

59. Plaintiff could not, through the exercise of reasonable care, have discovered FOSAMAX's defects or perceived the dangers posed by the drug.

60. As a direct and proximate consequence of Defendant's conduct, Plaintiff BONNIE MOORE sustained significant and permanent injury to her jaw. In addition, Plaintiff required and will continue to require healthcare as a result of her injury. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

-12-

61.   Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

## COUNT III: BREACH OF EXPRESS WARRANTY

62.   Plaintiff re-alleges the above paragraphs as if fully set forth herein.

63.   Defendant expressly represented to Plaintiff BONNIE MOORE, other consumers and the medical community that FOSAMAX was safe and fit for its intended purposes, was of merchantable quality, did not produce any dangerous side effects, and had been adequately tested.

64.   FOSAMAX does not conform to Defendant's express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injuries.

65.   At all relevant times FOSAMAX did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

66.   Plaintiff BONNIE MOORE, other consumers, and the medical community relied upon Defendant's express warranties.

67.   As a direct and proximate result of Defendant's actions, Plaintiff BONNIE MOORE sustained serious significant and permanent injury to her jaw. In addition, Plaintiff required and will continue to require healthcare and services as a result of her injury. Plaintiff has incurred and will continue to incur medical and related expenses as a

-13-

result of her injury. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

68.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

### COUNT IV: BREACH OF IMPLIED WARRANTY

69.    Plaintiff re-alleges the above paragraphs as if fully set forth herein.

70.    Defendant manufactured, distributed, advertised, promoted, and sold FOSAMAX.

71.    At all relevant times, Defendant knew of the use for which FOSAMAX was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

72.    Defendant was aware that consumers, including Plaintiff BONNIE MOORE, would use FOSAMAX for treatment or prevention of osteoporosis or Paget's Disease and for other off-label purposes.

-14-

73. Plaintiff and the medical community reasonably relied upon the judgment and sensibility of Merck to sell FOSAMAX only if it was indeed of merchantable quality and safe and fit for its intended use.

74. Defendant breached its implied warranty to consumers, including Plaintiff; FOSAMAX was not of merchantable quality or safe and fit for its intended use.

75. Consumers, including Plaintiff, and the medical community, reasonably relied upon Defendant's implied warranty for FOSAMAX.

76. FOSAMAX reached consumers without substantial change in the condition in which it was manufactured and sold by Defendant.

77. As a direct and proximate result of Defendant's action, Plaintiff BONNIE MOORE sustained significant and permanent injury to her jaw. In addition, Plaintiff required and will continue to require healthcare and services as a result of her injury. Plaintiff has incurred and will continue to incur medical and related expenses as a result of her injury. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

-15-

78.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

<u>COUNT V: FRAUDULENT MISREPRESENTATION</u>

79.    Plaintiff re-alleges the above paragraphs as if fully set forth herein.

80.    Defendant made fraudulent misrepresentations with respect to FOSAMAX in the following particulars:

a..    Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX had been tested and found to be safe and effective for the treatment of osteoporosis and Paget's Disease; and

b.    Defendant represented that FOSAMAX was safer than other alternative medications.

81.    Defendant knew that its representations were false, yet it willfully, wantonly, and recklessly disregarded its obligation to provide truthful representations regarding the safety and risk of FOSAMAX to consumers, including Plaintiff, and the medical community.

82.    The representations were made by Defendant with the intent that doctors and patients, including Plaintiff, rely upon them.

-16-

83.     Defendant's representations were made with the intent of defrauding and deceiving
        Plaintiff, other consumers, and the medical community to induce and encourage the
        sale of FOSAMAX.

84.     Plaintiff BONNIE MOORE, Plaintiff's doctors, and others relied upon the
        representations.

85.     Defendant's fraudulent representations evinced its callous, reckless, willful, and
        depraved indifference to the health, safety, and welfare of consumers, including
        Plaintiff.

86.     As a direct and proximate result, Plaintiff BONNIE MOORE sustained significant
        and permanent injury to her jaw. In addition, as a result of her injury, Plaintiff
        required and will continue to require healthcare and services, and has incurred and
        will continue to incur medical and related expenses. Plaintiff also suffered and will
        continue to suffer diminished capacity for the enjoyment of life, a diminished quality
        of life, increased risk of premature death, aggravation of preexisting conditions and
        activation of latent conditions, and other losses and damages. Plaintiff's direct
        medical losses and costs include care for hospitalization, physician care, monitoring,
        treatment, medications, and supplies. Plaintiff has incurred and will continue to incur
        mental and physical pain and suffering and loss of wages and wage-earning capacity.

87.     Defendant's conduct as described above was committed with knowing, conscious,
        wanton, willful, and deliberate disregard for the value of human life and the rights
        and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive

-17-

damages so as to punish Defendant and deter it from similar conduct in the future.

## COUNT VI: FRAUDULENT CONCEALMENT

88.    Plaintiff re-alleges the above paragraphs as if fully set forth herein.

89.    Defendant fraudulently concealed information with respect to FOSAMAX in the
following particulars:

a. Defendant represented through its labeling, advertising, marketing materials, detail
persons, seminar presentations, publications, notice letters, and regulatory submissions that
FOSAMAX was safe and fraudulently withheld and concealed information about the
substantial risks of using FOSAMAX; and

b.    Defendant represented that FOSAMAX was safer than other alternative
medications and fraudulently concealed information which demonstrated that FOSAMAX
was not safer than alternatives available on the market.

90.    Defendant had sole access to material facts concerning the dangers and unreasonable
risks associated with FOSAMAX.

91.    Defendant's concealment of information about the risks associated with taking
FOSAMAX was intentional, and the representations made by Defendant were known
by Defendant to be false.

92.    The concealment of information and the misrepresentations about FOSAMAX were
made by Defendant with the intent that doctors and patients, including Plaintiff, rely
upon them.

-18-

93.   Plaintiff BONNIE MOORE, Plaintiff's doctors, and others relied upon the representations and were unaware of the substantial dental and oral risks associated with taking FOSAMAX that Defendant had concealed from them.

94.   As a direct and proximate result of Defendant's fraudulent concealment and misrepresentations, Plaintiff BONNIE MOORE suffered significant and permanent injury to her jaw as well as severe and permanent injuries, including pain, mental and physical anguish and suffering, a diminished capacity for the enjoyment of life, aggravation of preexisting conditions and activation of latent conditions, and a fear of developing other harmful conditions or problems as a result of the injury. Plaintiff has suffered and will continue to suffer a loss of wages and wage-earning capacity and has incurred expenses for medical care and treatment due to the injuries caused by FOSAMAX.

95.   Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

## GLOBAL PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant, as follows:

a. compensatory damages on each cause of action;

b. punitive damages on each cause of action;

c. reasonable attorneys' fees where recoverable;

-19-

d. costs of this action; and

e. such other additional and further relief as the Court may deem necessary, appropriate, and just.

## VI.  DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and issues so triable.

MEGHAN M. TANS
TIMOTHY M. O'BRIEN
LEVIN, PAPANTONIO, THOMAS, MITCHELL, ESCHSNER & PROCTOR , P.A.
316 South Baylen Street, Suite 600 (32502)
P. O. Box 12308
Pensacola, Florida 32591
Telephone(850) 435-7181
FAX (850) 436-6181

-20-

JS 44C/SDNY
REV. 12/2005

CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

PLAINTIFFS BONNIE MOORE

DEFENDANTS MERCK & CO., INC.

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER
LEVIN, PAPANTONIO, ET. AL., 316 S. BAYLEN STREET, SUITE 600, PENSACOLA, FL 32591

ATTORNEYS (IF KNOWN)
Meghan M. Tans, Timothy M. O'Brien

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
28 U.S.C. 1332
PRODUCT LIABILITY - DEFECTIVE PHARMACEUTICAL (Fosamax)

Has this or a similar case been previously filed in SDNY at any time? No☐ Yes? ☒   Judge Previously Assigned KEENAN

If yes, was this case Vol.☐ Invol. ☐ Dismissed. No☒ Yes ☐   If yes, give date _____ & Case No. _____

(PLACE AN [x] IN ONE BOX ONLY)               NATURE OF SUIT

ACTIONS UNDER STATUTES

| TORTS | | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| **CONTRACT** | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 AGRICULTURE | [ ] 422 APPEAL 28 USC 158 | [ ] 400 STATE REAPPORTIONMENT |
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | [ ] 362 PERSONAL INJURY - MED MALPRACTICE | [ ] 620 FOOD & DRUG | [ ] 423 WITHDRAWAL 28 USC 157 | [ ] 410 ANTITRUST |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT LIABILITY | [X] 365 PERSONAL INJURY PRODUCT LIABILITY | [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881 | | [ ] 430 BANKS & BANKING |
| [ ] 130 MILLER ACT | [ ] 320 ASSAULT, LIBEL & SLANDER | [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY | [ ] 630 LIQUOR LAWS | **PROPERTY RIGHTS** | [ ] 450 COMMERCE/ICC RATES/ETC. |
| [ ] 140 NEGOTIABLE INSTRUMENT | [ ] 330 FEDERAL EMPLOYERS' LIABILITY | | [ ] 640 RR & TRUCK | [ ] 820 COPYRIGHTS | [ ] 460 DEPORTATION |
| [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | [ ] 340 MARINE | **PERSONAL PROPERTY** | [ ] 650 AIRLINE REGS | [ ] 830 PATENT | [ ] 470 RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO) |
| [ ] 151 MEDICARE ACT | [ ] 345 MARINE PRODUCT LIABILITY | [ ] 370 OTHER FRAUD | [ ] 660 OCCUPATIONAL SAFETY/HEALTH | [ ] 840 TRADEMARK | [ ] 480 CONSUMER CREDIT |
| [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS) | [ ] 350 MOTOR VEHICLE | [ ] 371 TRUTH IN LENDING | [ ] 690 OTHER | | [ ] 490 CABLE/SATELLITE TV |
| [ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS | [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY | [ ] 380 OTHER PERSONAL PROPERTY DAMAGE | | **SOCIAL SECURITY** | [ ] 810 SELECTIVE SERVICE |
| [ ] 160 STOCKHOLDERS SUITS | [ ] 360 OTHER PERSONAL INJURY | [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY | **LABOR** | [ ] 861 HIA (1395FF) | [ ] 850 SECURITIES/COMMODITIES/EXCHANGE |
| [ ] 190 OTHER CONTRACT | | | [ ] 710 FAIR LABOR STANDARDS ACT | [ ] 862 BLACK LUNG (923) | [ ] 875 CUSTOMER CHALLENGE 12 USC 3410 |
| [ ] 195 CONTRACT PRODUCT LIABILITY | | | [ ] 720 LABOR/MGMT RELATIONS | [ ] 863 DIWC (405(g)) | [ ] 891 AGRICULTURE ACTS |
| [ ] 196 FRANCHISE | | | [ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT | [ ] 863 DIWW (405(g)) | [ ] 892 ECONOMIC STABILIZATION ACT |
| | | | [ ] 740 RAILWAY LABOR ACT | [ ] 864 SSID TITLE XVI | [ ] 893 ENVIRONMENTAL MATTERS |
| | | | [ ] 790 OTHER LABOR LITIGATION | [ ] 865 RSI (405(g)) | [ ] 894 ENERGY ALLOCATION ACT |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 EMPL RET INC SECURITY ACT | **FEDERAL TAX SUITS** | [ ] 895 FREEDOM OF INFORMATION ACT |
| [ ] 210 LAND CONDEMNATION | [ ] 441 VOTING | [ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255 | | [ ] 870 TAXES | [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE |
| [ ] 220 FORECLOSURE | [ ] 442 EMPLOYMENT | | | [ ] 871 IRS-THIRD PARTY 20 USC 7609 | [ ] 950 CONSTITUTIONALITY OF STATE STATUTES |
| [ ] 230 RENT LEASE & EJECTMENT | [ ] 443 HOUSING ACCOMMODATIONS | [ ] 530 HABEAS CORPUS | | | [ ] 890 OTHER STATUTORY ACTIONS |
| [ ] 240 TORTS TO LAND | [ ] 444 WELFARE | [ ] 535 DEATH PENALTY | | | |
| [ ] 245 TORT PRODUCT LIABILITY | [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT | [ ] 540 MANDAMUS & OTHER | | | |
| [ ] 290 ALL OTHER REAL PROPERTY | [ ] 446 AMERICANS WITH DISABILITIES -OTHER | [ ] 550 CIVIL RIGHTS | | | |
| | [ ] 440 OTHER CIVIL RIGHTS | [ ] 555 PRISON CONDITION | | | |

*ACTIONS UNDER STATUTES* (above REAL PROPERTY/CIVIL RIGHTS)

Check if demanded in complaint:

CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $_____   OTHER _____

Check YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

JUDGE KEENAN                    DOCKET NUMBER 06-MDL 1789

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

*(PLACE AN x IN ONE BOX ONLY)*                                    ORIGIN

[x] 1 Original Proceeding   [ ] 2a. Removed from State Court   [ ] 3 Remanded from Appellate Court   [ ] 4 Reinstated or Reopened   [ ] 5 Transferred from (Specify District)   [ ] 6 Multidistrict Litigation   [ ] 7 Appeal to District Judge from Magistrate Judge Judgment

[ ] 2b. Removed from State Court AND at least one party is a pro se litigant

*(PLACE AN x IN ONE BOX ONLY)*                BASIS OF JURISDICTION                IF DIVERSITY, INDICATE CITIZENSHIP BELOW.

[ ] 1 U.S. PLAINTIFF   [ ] 2 U.S. DEFENDANT   [ ] 3 FEDERAL QUESTION (U.S. NOT A PARTY)   [x] 4 DIVERSITY                (28 USC 1332, 1441)

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [x] 5 |
| CITIZEN OF ANOTHER STATE | [x] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

BONNIE MOORE
1522 W. 3rd Street
Irving, TX 76679

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

MERCK & CO., INC.
ONE MERCK DRIVE
P.O. BOX 100, WS3AB-05
WHITEHOUSE STATION, NEW JERSEY, 08889-0100

DEFENDANT(S) ADDRESS UNKNOWN
    REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:   THIS ACTION SHOULD BE ASSIGNED TO:   [ ] WHITE PLAINS   [x] FOLEY SQUARE
             (DO NOT check either box if this a PRISONER PETITION.)

DATE  1/24/09      SIGNATURE OF ATTORNEY OF RECORD              ADMITTED TO PRACTICE IN THIS DISTRICT
                                                                [ ] NO
                                                                [x] YES (DATE ADMITTED Mo. 5     Yr. 2007 )
RECEIPT #                                                       Attorney Bar Code # XXXXX

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

SOUTHERN _____ DISTRICT OF _____ NEW YORK

BONNIE MOORE

## SUMMONS IN A CIVIL CASE

V.

CASE NUMBER:

MERCK & CO., INC.

TO: (Name and address of defendant)

MERCK & CO., INC.
C/O C T CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK, 10011

YOU ARE HEREBY SUMMONED and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

MEGHAN M. TANS
LEVIN, PAPANTONIO, THOMAS, MITCHELL, ECHSNER & PROCTOR, P.A.
316 S. BAYLEN STREET, SUITE 600
PENSACOLA, FL 32591

an answer to the complaint which is herewith served upon you, within _____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

CLERK _____

DATE _____

(BY) DEPUTY CLERK

AO 440  (Rev. 10/93)  Summons In a Civil Action -SDNY  WEB 4/99

## RETURN OF SERVICE

|  | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] |  |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant.  Place where served: _____
_____

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____
_____

☐  Returned unexecuted: _____
_____
_____

☐  Other *(specify)*: _____
_____
_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
|  |  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
                        Date                                                          Signature of Server

                                                        _____
                                                        Address of Server

_____

(1)    As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
IN RE: Fosamax Products Liability    :
Litigation                           :
                                     :        1:06-md-1789 (JFK)
------------------------------------x
                                     :     ORDER FOR ADMISSION
*This Document Relates to:* MDL-1789 :        PRO HAC VICE
                                     :
*Fredericka Allen v. Merck Case No.:06-cv-9452*
*Bridget Arcemont v. Merck Case No.: 07-cv-3389*     :
*Virginia Bargeson v. Merck Case No.: 06-cv-9454*
*Shirley Bolex v. Merck Case No.:06-cv-9455*
*Sharon Bradford v. Merck Case No.: 07-cv-477*
*Winnie Braswell v. Merck Case No.: 1:07-cv-1413*



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5-30-2007

*Roberta Brodin v. Merck Case No : 07-cv-3466*
*Brenda Carpenter v. Merck Case No.: 07-cv-3464*
*Sonja Doroff v. Merck Case No.: 07-cv-3462*
*Debra Flores v. Merck Case No.: 07-cv-02443*
*Sandra Hall v. Merck Case No.: 07-cv-3467*
*Purcia Hardy v. Merck Case No.: 07-cv-797*
*Carolyn Hester v. Merck Case No.:06-cv-9450*
*Pamela Hines v. Merck Case No.: 07-cv-480*
*Rochelle Kemig v. Merck Case No.: 07-cv-00478*
*Anna Merwin v. Merck Case No.: 07-cv-3463*
*Janice Moe v. Merck Case No.: 07-cv-00479*
*James Napier v. Merck Case No.:06-cv-9451*
*Wilma Parslow v. Merck Case No.: 07-cv-3465*
*Tamaie Porter v. Merck Case No.: 07-cv-790*
*Margaret Sizelove v. Merck Case No.: 07-cv-3459*
*Maxine Skhule v. Merck Case No.: 07-cv-3461*
*Edna Sykes v. Merck Case No.:07-cv-1412*
*Kathleen Toelke v. Merck Case No.:06-cv-7629*
*Reyna Vandercar v. Merck Case No.:06-cv-11329*
*Nellie Wade v. Merck Case No.:06-cv-9453*
*Carol Young v. Merck Case No.: 06-cv-0531*
*Bonnie Laughlin v. Merck Case No.:07-cv-3827*
------------------------------------:

   Considering the Certificate of Good Standing submitted by counsel, IT IS

HEREBY ORDERED that:

Meghan M. Tans
Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 400
P.O. Box 12308 (32591)
Pensacola, FL 32502
Phone: (850) 435-7181
Facsimile: (850) 436-6181
Email: mtans@levinlaw.com

is admitted to practice pro hac vice as counsel for the plaintiffs in the above-referenced

MDL proceeding.

Signed this 30 day of _May_, 2007, at _New York_, New York.

_John F. Keenan_
UNITED STATES DISTRICT COURT JUDGE

AO 136 (Rev. 9/98) Certificate of Good Standing

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

## CERTIFICATE OF GOOD STANDING

*I, Sheryl L. Loesch , Clerk of this Court,*

*certify that Meghan M. Tans, Bar # 00888745,*

*was duly admitted to practice in this Court on*

*April 22, 2005, and is in good standing*

*as a member of the Bar of this Court.*

*Dated at Jacksonville, Florida, on May 17, 2007.*

SHERYL L. LOESCH
*CLERK*

_____
*DEPUTY CLERK*